COURT OF APPEALS
MORROW COUNTY, OHIO
FIFTH APPELLATE
DISTRICT

| | | |
|---|---|---|
| IN THE ESTATE OF VERNON D. TODD, | : | JUDGES: |
| | : | |
| CHARLES W. TODD, | : | |
| | : | Hon. Craig R. Baldwin, P.J. |
| Appellant/Cross-Appellee | : | Hon. William B. Hoffman, J. |
| | : | Hon. Earle E. Wise, J. |
| -vs- | : | |
| | : | |
| TERRENCE P. FLAHIVE, ADM'R OF THE | : | Case No. 2021 CA 0002 |
| ESTATE OF VERNON D. TODD, | : | |
| | : | |
| Appellee/Cross-Appellant | : | |
| | : | |
| and | : | |
| | : | |
| VERNON D. TODD, II and TAMMY JO LOVE | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Morrow County Court of
                                Common Pleas, Case No. 18 ES 18717


JUDGMENT:                       Affirmed


DATE OF JUDGMENT:               December 14, 2021

APPEARANCES:

For Appellee-Cross-Appellant            For Appellant-Cross Appellee
Adm'r Terrence P. Flahive               Charles W. Todd

EHREN W. SLAGLE                         SCOTT M. GORDON
KATHRYN L. TRAVEN                       DAVID J. GORDON
Collins & Slagle Co., LPA 351           82 North Franklin Street
W. Nationwide Boulevard                 Delaware, Ohio 43015
Columbus, Ohio 43215
                                        JAMES W. JORDAN
                                        80 Dorchester Square North
For Appellees- Vernon D. Todd II,       Westerville, Ohio 43081
And Tammy Jo Love

MICHAEL R. TRAVEN
ROBERT B. GRAZIANO
Fisherbroyles, LLP
20 South Third Street, Suite 210
Columbus, Ohio 43215

*Baldwin, P.J.*

{¶1} Appellant, Charles W. Todd, appeals the decision of the Morrow County Court of Common Pleas permitting appellees, Vernon Todd, II and Tammy Jo Love the opportunity to participate in the R.C. 2107.24 hearing to determine if the documents submitted by appellant comprised Vernon Todd's will. Charles Todd also appeals the trial court's finding that the documents submitted to the trial court did not satisfy the requirements of R.C. 2107.24 and, therefore, were not admitted to probate. Appellees are Terrance P. Flahive, Administrator of the Estate, Vernon Todd, II. and Tammy Jo Love.

{¶2} Appellee Flahive filed a cross appeal of the trial court's decision to deny his motion to dismiss Charles Todd's applications to probate a will pursuant to R.C. 2107.10.

### STATEMENT OF FACTS AND THE CASE

{¶3} Vernon Todd passed away on February 14, 2017. On April 23, 2017 Vernon Todd's brother, Charles Todd, sent a letter to Tammy Jo Love, and Christina Love Lucas, decedents daughter and grand-daughter:

Tammy and Christina,

I am sending you a copy of your father (Grandfather) last will. He dictated it to his sister-in-law while at Riverside Hospital in Columbus in July. I had nothing to do with it.

You need to sign it and date it and return them to me.

Due to the fact I might not be around in 4 or 5 years I will be glad to send the full amount-If that is okay with you.

C. Todd

I will need Christina's address.

(Motion to Dismiss and/or Strike Any and all Motions or Memoranda Filed by Tammy Jo

Love and Vernon D. Todd II in Connection with the Application to Admit the Decedent's Will to Probate, Dec. 20, 2018, Exhibit D).

{¶4} On May 17, 2017 Charles Todd sent a letter to Vernon Todd, II, decedent's son:

V.D.T. II

Your father on July 24, 2016 while at Riverside Hospital in Columbus dictated to Teddy Gene what he wanted done with his assets. I had nothing to do with it.

I feel it my obligation to carry out his wishes.

If you are in agreement sign & date and return the paper. If you think it is unfair then do what you want. Remember the bird in the hand is worth two in a bush.

Being the next of kin does not mean a thing. A person can leave their assets to whom ever (SIC) they want.

If you had cared for your father and his properties you might of (SIC) gotten a million plus dollars.

As for me I do not need his money, so after expenses and taxes it will go to a charity.

So honor your father's wishes & $80,000 will be on its way. Cause me more grief & you could get nothing.

These last 10 month have been hell for me. And I blame you. Florida has an  Elder Abuse Law   which states that children are responsible for the care of their parents.

(Motion to Dismiss and/or Strike Any and all Motions and/or Memoranda Filed by Tammy Jo Love and Vernon D. Todd II in Connection with the Application to Admit the Decedent's Will

to Probate, Dec. 20, 2018, Exhibit A).

{¶5} Both Tammy Jo Love and Vernon Todd Jr signed the document they received from Charles Todd on the line for witnesses and returned them to Charles Todd. In turn, they each received cashier's checks in the amount of eighty-thousand dollars. Tammy Jo Love's check was dated May 12, 2017 and Vernon Todd, Jr's check was dated June 9, 2017. Both checks list the remitter as Charles W. Todd. The record contains no evidence that anyone had opened an estate in the name of Vernon Todd when the checks were issued or that Charles Todd had authority to act on behalf of the estate of Vernon Todd.

{¶6} Terrance P. Flahive filed an application to administer the estate of Vernon Todd on March 14, 2018 and included a narrative describing his suspicion that Charles Todd had wrongly acquired assets of the estate. The application indicated that Vernon Todd did not have a will.

{¶7} On September 21, 2018 Charles Todd filed an application to probate the will of Vernon Todd with a copy of a purported will as well as affidavits from Gene and George Todd attesting to the validity of the will. Charles Todd acknowledged that the will failed to fulfill the requirements of R.C. 2107.03 because it was not signed by two witnesses, but contended that the affiant's testimony satisfied the requirements of R.C. and that the document should be considered the will of Vernon Todd.

{¶8} On October 3, 2018 Gene Todd filed a document she described as an original last will of Vernon Todd and, on November 17, 2018 Charles Todd filed a third

document he contended was the original last will of Vernon Todd with a motion to amend his application to probate the will of Vernon Todd.

{¶9} All three alleged wills contain hand written amendments and reflect a signature date of July 26, 2016. The language of each document is similar, but none are witnessed as required by R.C. 2107.03 and all can be distinguished by different details.

{¶10} Flahive filed objections to the admission of the will to probate as well as a motion to dismiss Charles Todd's applications to probate the will contending that he violated R.C. 2107.10 which requires a timely filing of the will. Vernon Todd, II and Tammy Jo Love moved to have the purported wills stricken as failing to satisfy the requirements of R.C. 2107.24 and that, for that reason, the documents were not wills. Charles Todd moved to strike any pleadings filed by Vernon Todd, II and Tammy Jo Love contending that their acceptance of the eighty-thousand-dollar payment estopped them from objecting to the validity of the will. In addition to these motions, the record contains numerous other motions suggesting that the parties in this matter rarely agreed upon the facts or the law.

{¶11} The various motions filed by the parties were heard by the trial court on April 30, 2019. The trial court denied the motion to dismiss for failure to comply with R.C. finding that Charles Todd had shown sufficient reasonable cause for the late filing to defeat the motion. The trial court also denied Charles Todd's motion to strike the pleadings of Vernon Todd, II and Tammy Jo Love, and found that they were not estopped from objecting to the status of the documents submitted as wills, concluding that the "[a]ctions of the Decedent's children to accept funds from Charles Todd do not at this juncture constitute receipt of any benefit from an Estate or satisfaction of any alleged Will

not yet established. Consequently, the estoppel argument fails." (Journal Entry, May 3, 2019, p. 6).

{¶12} The issue of whether any of the documents submitted to the probate court were the last will of Vernon Todd was scheduled for hearing on July 29, 2019.

{¶13} Charles Todd offered the testimony of Gene and George Todd at the July 2019 hearing and both confirmed that they witnessed the decedent sign a single document, but neither Gene nor George could account for the fact that three documents

purporting to be the will of Vernon Todd were presented to the court, all bearing an original signature.

{¶14} Gene and George Todd explained that Vernon Todd suffered an illness and was hospitalized for a period of time including July 24 and 25, 2016. His sister-in-law, Gene, and her grandson, Nicholas Liening, visited him on July 24th and Gene recalled that she spoke with Vernon about the disposition of his estate. Gene described how she took notes of their conversation during the visit on the 24th and let Vernon review them. The notes she created contain what Gene identified as the signature of Vernon Todd, added by Vernon after he had reviewed her notes.

{¶15} Nicholas has some recollection of visiting Vernon Todd with his grandmother, but cannot be certain of the date. He did recall that he helped Vernon recall a word and that Vernon jokingly said that he would include a ten-thousand-dollar gift for him in the will. He did recall Vernon and Gene exchanging a piece of paper and he believed the handwritten page of notes marked Exhibit Q3 was the document he saw on the day of his visit.

{¶16} Gene used her notes to create what she described as Vernon Todd's will and returned to Vernon Todd's hospital room on July 25th with her husband George Todd.

Vernon asked that she make alterations to the will regarding the timing of the gifts to his children and grandchild and she recalled making those changes by hand. Both Gene and her husband George claimed they saw Vernon sign the document, but neither witnessed it. Gene explained that he did not sign the document as a witness, because she believed that relatives were barred from serving as witnesses. She maintained possession of the document and stored it in her home after delivering a copy to Charles Todd. She later delivered it to her attorney who filed it with the court on October 3, 2018.

{¶17} Gene could not explain how the other documents with the original signature of Vernon Todd were created. She stated that she printed more than one copy of the document, took those copies to the hospital, and that Vernon must have signed them, but she did not witness Vernon sign more than one copy. Her husband, George, also verified that Vernon signed one copy in his presence. Gene conceded that she was surprised when she was confronted by the additional documents bearing what she believed was Vernon Todd's original signature.

{¶18} Charles Todd testified, but he did not offer any information that would explain the existence of three documents with Vernon Todd's original signature. He claims that he received a copy of the will that Gene Todd had in her possession, but he added that he did not know where his attorney acquired the document filed with the court on September 21, 2018. He could not verify that any of the signatures on the documents were his brother's and when asked which if the three documents filed with the court was his brother's will, he answered "I don't know." (Trial Transcript, p. 743, Lines 13-29).

{¶19} In addition to his inability to identify which of three documents was the will, Charles Todd's claim that the documents memorialize his brothers wishes regarding his estate is undermined by his testimony and the actions he claims he took to fulfill the terms

of the documents. He admitted that he could not identify his brother's signature, that he could not verify which of the three documents were submitted to the trial court was the last will and testament of his brother and that he did not open an estate because "I didn't feel we had any assets worth probating." (Trial Transcript, p. 772, Lines 20-22). Despite the lack of assets worth probating, Charles Todd claimed he fulfilled the wishes of his brother by distributing over two hundred thousand dollars.

{¶20} He acknowledged that he was neither the executor nor the administrator of Vernon Todd's Estate, but he claims he was motivated to fulfill his brother's wishes

regarding the distribution of funds. He distributed funds, but not incompliance with the purported will.

{¶21} The documents submitted by Charles Todd suggested that the Methodist Church in Mt. Gilead should receive twenty-five thousand dollars but, contrary to that language, Charles Todd paid only fifteen thousand dollars to the Mt. Gilead church and chose a different church to receive the balance. While the documents he filed with the court called for annual payments of funds to Vernon Todd, II and Tammy Jo Love and Christina Love Lucas until the total amount was paid, Charles Todd paid a single lump sum to all three. Finally, Charles Todd argued that Vernon Todd, II and Tammy Jo Love were estopped from opposing the verification of the will because they received the amount described in the will, but he acknowledged that those funds were paid from his personal account and not from an estate account.

{¶22} The balance of Vernon Todd's estate was to be paid to Charles Todd per documents submitted to the trial court, but the record does not contain any evidence of the amount or completion of such a transfer.

{¶23} The validity of any of the three documents as a will was further tested by an examination of the signature by handwriting experts retained by Charles Todd and by the Appellees Vernon Todd, II and Tammy Jo Love. Charles Todd's expert, Katherine Schoenberger, concluded that all of the signatures were the signature of Vernon Todd, with the exception of the signature on the handwritten notes created by Gene Todd. With regard to that signature, she noted that the mode of signing was such that she was not able to compare it to known signatures of Vernon Todd.

{¶24} The Estate's expert, Erich Speck, concluded that all of the signatures on the purported wills and the notes created by Gene Todd were not the signature of Vernon Todd. Speck arrived at his conclusion by giving weight to the consistent differences

between the questioned signatures and the known signatures that, in his experience, reflected an attempt to copy the handwriting of another without having knowledge of how the signature was made. He acknowledged similarities, but focused on differences emphasizing that "similarities are not the driving force just because there are similarities. You need to look at fundamental differences that occur in pen position direction of stroke, things like that, that a forger is not going to pick up. * * * When you have fundamental differences that is something you put a lot more weight on. That is an individual unexplainable fundamental difference. That's highly significant." (Trial Transcript. p. 502, lines 4-17).

{¶25} The trial court completed a thorough analysis of the evidence presented and concluded that "[t]here is significant doubt that the Decedent signed any of the three original documents purported to be his will." (Journal Entry, Feb. 25, 2021, p. 74). The trial court found that "when considering all the conflicts with credibility outlined extensively above and without assigning the mantel of forgery, there are simply too many,

unexplained mysteries, as evidenced by not one, not two, but three separate original documents claiming to be the original will. The Court FINDS (SIC) no document filed or combination thereof, to be the Decedent's will." (*Id.* at p. 72) The court ruled that "Applicant has failed to meet his burden of proof by clear and convincing evidence and no document submitted for consideration shall be admitted to probate." (*Id.* at p. 76).

{¶26} Charles Todd filed a timely appeal and submitted two assignments of error:

{¶27} "I. THE TRIAL COURT ERRED WHEN IT PERMITTED THE CHILDREN OF DECEDENT TO CONTEST THE APPLICATION TO PROBATE WILL."

{¶28} "II. THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHEN IT CONCLUDED THAT THERE WAS NOT CLEAR AND CONVINCING EVIDENCE THAT THE LAST WILL AND TESTAMENT OF

DECEDENT COMPLIED WITH O.R.C. §2107.24."

{¶29} Administrator Flahive filed a cross appeal and submitted one assignment of error:

{¶30} "I. THE TRIAL COURT'S DENIAL OF ADMINISTRATOR'S MOTION TO PRECLUDE APPELLANT, CHARLES W. TODD, FROM INHERITING FROM DECEDENT'S ESTATE AND TO DISMISS HIS ORIGINAL AND AMENDED APPLICATIONS TO PROBATE WILLS, IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

## ANALYSIS I.

{¶31} In his first assignment of error, Charles Todd contends that the trial court erred by permitting Vernon Todd, II and Tammy Jo Love the opportunity to contest the application to probate the will of Vernon Todd. The flaw in Charles Todd's argument appears in the text of this assignment of error as he assumes that the hearing before the court involved a valid will when the only issue before the court was whether any of the three original signed documents was the last will and testament of Vernon Todd. That flaw, as well as the fact that the precedent cited by Charles Todd was inapposite, leads us to reject this assignment of error.

{¶32} When Charles Todd filed his first application to probate the will of Vernon Todd, he acknowledged that the will had not been witnessed and therefor did not comply with the requirements of R.C. 2107.03, but argued that the will satisfied the terms of R.C.2107.24. That statute, effective July 20, 2006, states in relevant part:

If a document that is executed that purports to be a will is not executed in compliance with the requirements of section 2107.03 of the Revised Code that document shall be treated as if it had been executed as a will in compliance with the requirements of that section if a probate court, after

holding a hearing, finds that the proponent of the document as a purported will has established, by clear and convincing evidence, all of the following:

(1) The decedent prepared the document or caused the document to be prepared.

(2) The decedent signed the document and intended the document to constitute the decedent's will.

(3) The decedent signed the document under division (A)(2) of this section in the conscious presence of two or more witnesses. As used in division (A)(3) of this section, "conscious presence" means

within the range of any of the witnesses' senses, excluding the sense of sight or sound that is sensed by telephonic, electronic, or other distant communication.

{¶33} The enacting legislation was adopted specifically to amend section 2107.27 and to create section 2107.24 of the Revised Code to provide a procedure for a probate court to treat a document as a will notwithstanding its noncompliance with the statutory formalities for executing wills. (Am. H.B. No. 265, 2006 Ohio Laws 96).

{¶34} The trial court recognized the purpose of the hearing under the statute was to determine if one or more of the documents submitted comprised the last will and testament of Vernon Todd and that the hearing was not a will contest. (Trial Transcript, p. 8., 15, 37, 170; Journal Entry, Feb. 25, 2021, p.5).

{¶35} The goal of the hearing under R.C. 2107.24 is distinctly different from the cases cited by Charles Todd. Revised Code 2107.24 serves as a means to determine whether a document is a will, while the decisions cited by Charles Todd involve

documents that were contested after they had been admitted to probate and a distribution had been made to the parties contesting the will. This court's decision *Snyder v. Snyder,* 5th App. No. 4-CA-79, 1979 Ohio App. LEXIS 9390, Oct, 31, 1979, cited by Charles Todd in support of his position is an example of the distinction between the case before us and the cited precedent. In *Snyder* the will had been admitted to probate and a distribution had been made and accepted by the complaining party. *Id.* at *1, *2.

**{¶36}** Further, the cases cited by Charles Todd presumably involved a document that was executed pursuant to R.C. 2107.03 or its predecessor and admitted to probate by court order, creating a presumption of its validity. *In re Estate of Harris v. Harris*, 5th

Dist. No. 2015CA00101, 2016-Ohio-2615, 63 N.E.3d 744, ¶ 38. None of the cases cited address the application of R.C. 2107.24 as all pre-dated the effective date of that section.

**{¶37}** Charles Todd admitted that the funds he paid out to satisfy Vernon Todd's last wishes were from his personal account, further distinguishing this case from those that he cited in support of his position. The funds were not paid out from an estate as they were in the cited cases, as Charles Todd did not believe there were assets "worth probating."

**{¶38}** Further, the cases cited by Charles Todd in support of his argument were decided before the adoption of R.C. 2107.24. Without the option provided by that section of the code, the documents submitted in the case sub judice would most likely have been rejected as clearly non-conforming by the courts in the cited cases and by the trial court in this matter. The opportunity to petition the trial court to accept non-conforming documents via the method described in R.C. 2107.24 is a relatively new development and the precedent established prior to its effective date must be restricted to similar factual situations.

**{¶39}** In the case before us Charles Todd bears the burden of establishing, by

clear and convincing evidence, that a will exists. Case law addressing a will contest is inapposite because, until Todd has satisfied the requirements of R.C. 2107.24, there is no will for any party to contest.

{¶40} Revised Code 2107.24 requires the court to conduct a hearing to determine if a document is a will. Charles Todd challenges the trial court's interpretation of that statute, so our review is de novo. *Turner v. CertainTeed Corp.*, 155 Ohio St.3d 149, 2018-Ohio-3869, 119 N.E.3d 1260, ¶ 11. We find that aside from requiring a proponent of the will to carry the burden of proof, the language of the statute does not prescribe the parties to the hearing. The statute provides the trial court broad discretion to conduct a compliant hearing and we find no abuse of that discretion by allowing the children of the decedent to participate.

{¶41} Finally, we note that the estate also objected to the introduction of the purported wills. Under the circumstances, even if the trial court's decision to exclude the children as parties was error, we see no prejudice to Charles Todd. We expect that the same evidence would have been presented through the estate with the children as interested witnesses rather than parties.

{¶42} Charles Todd's first assignment of error is denied.

## II.

{¶43} In his second assignment of error, Charles Todd asserts that "the trial court's decision was against the manifest weight of the evidence when it concluded that there was not clear and convincing evidence that the last will and testament of decedent complied with O.R.C. §2107.24." On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case. A reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or

finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 546 (1997), the Supreme Court of Ohio explained the following:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the
>
> issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief."* (Emphasis sic.)

{¶44} In weighing the evidence however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley v. Volkman,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517 ¶ 21.

{¶45} Charles Todd submitted applications to probate the will of Vernon Todd with two original signed documents representing that each was the will of Vernon Todd. Gene and George Todd filed a third original signed document claiming that they witnessed Vernon Todd sign it as his last will and testament, but without an application to probate the will. None of the documents were witnessed, so none complied with the requirements of R.C. 2107.03. As the only applicant to probate a will, Charles Todd had the opportunity to establish, by clear and convincing evidence, that one or more of the documents fulfilled the requirements of R.C. 2107.24. That code section provides an alternative route to probate for a document that is non-compliant with 2107.03, but still contains the hallmarks of

a testimonial document.

{¶46} The facts in the record reveal a fundamental problem with Charles Todd's presentation in the context of R.C. 2107.24. The text clearly limits its application to a single document submitted by the proponent as a purported will, but in the case before the trial court, three separate documents with original, "ink on the paper" signatures were presented to the court and Charles Todd did not provide any argument regarding which

should be considered the will, presumably relying on the court to select the "best" of the three. (Trial Transcript, p. 582, lines 18-22). Charles Todd's approach does not fulfill the requirements of R.C. 2107.24 which obligate him, as proponent, to establish which document the decedent prepared or caused to be prepare, which document the decedent signed with the intent to constitute a will and which document was signed in the conscious presence of two or more witnesses. We find this defect significant as the statute does not provide the trial court authority to select from more than one document submitted by the proponent, but places the burden on the proponent to prove a document is the will of the decedent.

{¶47} The trial court acknowledged the confusion, but focused upon the testimony of the handwriting experts to resolve the case, finding that Erich Speckin, expert of Tammy Jo Love and Vernon Todd, II, was more credible as a result of superior experience. The trial court found Speckin "has not only comparably recognized, academic training, but also has experience and years of specialty recognition, supported by numerous requests of attorneys and governmental bodies for his testimony in many states and countries. This gives him equal, if not greater professional recognition in the specialized field than Applicant's Expert, and thus more potential weight' and that "[w]hen comparing the parties' experts, Beneficiaries' Expert's simply has greater and more expansive training, along with significantly more public and legal recognition, than

Applicant's Expert." (Journal Entry, Feb. 25, 2021, p. 54, 55).

**{¶48}** After reviewing the experience of the experts, the trial court turned to their analysis of the signatures on the purported wills and found Charles Todd's expert analysis "incomplete" for failure to explore the "collective dissimilarities found repeatedly in the QUESTIONED (SIC) documents to the similar or common characteristics of the

KNOWN (SIC) signatures." (*Id.* at 58). The trial court cited with approval Speckin's conclusion that "[t]he forger may become more proficient at the forgery, but does not recognize his or her own habits as they become more pronounced as dissimilarities from the KNOWN signatures. Trial Tr. 500-502, 532-533. The forger's unique habits will inevitably surface, presenting these habits as common dissimilarities. Thus, making analysis of dissimilarities, NOT emphasized by Applicant's Expert, so fundamentally important." (*Id.* at 63).

**{¶49}** After an extensive review of the testimony and evidence the trial court concluded that "* * * when considering all the conflicts with credibility outlined extensively above and without assigning the mantel of forgery, there are simply too many, unexplained mysteries, as evidenced by not one, not two, but three separate original documents claiming to be the original will. The Court FINDS no document filed or combination thereof, to be the Decedent's will" and that "Since significant weight is given to this conclusion that the QUESTIONED signatures are not the Decedent's signatures, clearly there is no Decedent testamentary intent, and no intent to execute a specific document or documents as a will." (*Id.* at 73,74).

**{¶50}** The trial court painstakingly reviewed the testimony and the evidence and our review must consider the presumption in favor of the trial court's factual findings. *Eastley, supra.* We have completed an examination of the entire record, weighed the evidence and all reasonable inferences, considered the credibility of witnesses and we

find that the trial court did not clearly lose its way and did not create such a manifest miscarriage of justice that the decision must be reversed and a new trial ordered. The record has sufficient evidence to support the trial court's finding that the signatures on the documents were not genuine, that Charles Todd did not present clear and convincing

evidence to satisfy the requirements of R.C. 2107.24 and that, for those reason, none of the documents will be admitted to probate as the will of Vernon Todd.

{¶51}  Charles Todd's second assignment of error is overruled.

{¶52}  The decision of the Ashland County Court of Common Pleas is affirmed.

{¶53} Cross-Appellant Flahive noted that his appeal was contingent and, if this court affirmed the decision of the trial court, no decision would be necessary. (Cross-  appellee's brief, p. 5) Because we have affirmed the decision of the trial court, we dismiss  the cross-appellant's contingent appeal.

By: Baldwin, P.J.

Hoffman, J. and

Wise, Earle, J. concur.